UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANN BEAR,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>                Defendant. | NO. C07-651CRD<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Ann Bear appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA" or "the Act"), 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court affirms the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a thirty-seven-year-old female, thirty-two years old at the alleged disability onset date. Administrative Record ("AR") at 53. She graduated from high school and has no history of substantial gainful activity as defined under the SSA. AR at 26. Plaintiff filed her application for SSI in February 2004 (Dkt. 16 at 2), alleging disability due to depression, drug and alcohol abuse, and stress. AR at 117. Her claim was denied initially and upon reconsideration. A *de novo* hearing before ALJ M.J. Adams was

ORDER - 1

held on August 3, 2006, resulting in an unfavorable decision on September 22, 2006. AR at 21-27. The ALJ heard testimony from two witnesses: plaintiff, who was represented by counsel, and a vocational expert. *Id*. Plaintiff requested review by the Appeals Counsel; on March 5, 2007, review was denied (AR at 6-8), rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On May 7, 2007, plaintiff initiated this civil action for judicial review of the Commissioner's final decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. EVALUATING DISABILITY

As the claimant, Ms. Bear bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less

ORDER - 2

than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded.

## V. THE ALJ'S FINDINGS

Step One: The ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. AR at 23, Finding 1.

Step Two: The ALJ found plaintiff had no exertional limitations but had the following severe mental impairments: dysthymic disorder, borderline intellectual functioning, and a personality disorder not otherwise specified. *Id*., Finding 2.

Step Three: The ALJ found plaintiff's impairments did not meet or equal the requirements of any listed impairment. *Id*., Finding 3. The ALJ next determined that plaintiff retained a RFC for a range of unskilled work. *Id*. at 24, Finding 4.

Step Four: The ALJ found that plaintiff did not have any past relevant work. *Id*. at 26, Finding 5.

Step Five: The ALJ determined that plaintiff could perform a significant number of unskilled jobs in the national economy, including work as a hand packager, housekeeping cleaner, and poultry dresser. *Id*. at 26-27, Finding 9. The ALJ therefore concluded plaintiff was not disabled as defined in the SSA. *Id*. at 27, Finding 10.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in determining plaintiff's RFC or in presenting the hypothetical question to the vocational expert ("VE")?

2. Did the ALJ err in evaluating plaintiff's educational level?

Dkt. No. 16 at 1.

ORDER - 4

## VII. DISCUSSION

*A.     The ALJ did not err in determining plaintiff's RFC or in conveying the appropriate RFC in the hypothetical question to the VE.*

At step five, the ALJ determined plaintiff had the RFC to perform unskilled work, including work as a housekeeping cleaner, poultry dresser and hand packager. AR at 24. Plaintiff challenges the RFC determination and the corresponding question presented to the VE, "because the ALJ did not include any limitation related to supervision in his residual functional capacity or hypothetical question." Dkt. 16 at 6. Further, plaintiff asserts that the ALJ, although accepting the opinion of examining physician Dr. Thom, "failed to mention Dr. Thom's opinion that Bear 'would have difficulty in accepting input from others' (Tr. at 289), i.e., had a limited ability to accept supervision." Dkt. 16 at 6. This Court disagrees: a limitation in accepting input from others does not equal a limited ability to accept supervision.

In making the RFC determination, the ALJ relied upon the findings of Dr. Thom, who found that plaintiff,

> ...[C]an do some simple repetitive tasks but her capacity to do more complex and detailed tasks appears limited by her mood and attitude problems. She has very little interest in her external environment at this time, and thus would have difficulty in accepting input from others.

AR at 289.

The ALJ noted that he found Dr. Thom's opinions persuasive, and accordingly concluded plaintiff,

> ...[H]as the residual functional capacity to understand, remember and carry out simple instructions; make simple work-related decisions necessary to function in unskilled work; respond appropriately to supervisors, co-workers and usual work situations and deal with changes in a routine work setting. She should not do work dealing with the general public.

AR at 24.

Thus, plaintiff's assertion that the limitation of "accepting input from others" was not included in the RFC is not founded; the ALJ concluded the limitation on input from others was legitimate and made allowances for it by limiting input from the general public. Dr. Thom did not find plaintiff was unable to deal with any or all input, nor did he place any specific limitation on interaction with supervisors or coworkers.

Plaintiff further argues that her inability to relate appropriately to coworkers and supervisors was

ORDER - 5

confirmed by two other examining psychologists, Dr. Knapp and Dr. Morris. However, the ALJ rejected the limitations found by Dr. Knapp, because Dr. Knapp's checkbox form was internally inconsistent. AR at 25; 303. Internal inconsistencies within an examining physician's report constitute relevant evidence. *Morgan v. Commissioner,* 169 F.3d 595, 603 (9th Cir. 1999). The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguity. *See Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751, 755. A determination of whether inconsistencies are material, whether inconsistencies in fact exist, and whether certain factors are relevant to discount the opinion of a treating physician, is within the ambit of the ALJ. *Morgan,* 169 F.3d at 603. Here, the ALJ cited specific inconsistencies supporting his rejection of Dr. Knapp's report, including that Dr. Knapp found marked limitations, but then found plaintiff had no problems caring for her daughter and no problems with self care or maintaining appropriate behavior. AR at 25. Thus, the ALJ's rejection of Dr. Knapp's report was supported by substantial evidence in the record.

Dr. Morris' report is dated five months after the ALJ's decision, but was submitted to the Appeals Counsel for consideration. AR at 414-25. Although the Appeals Council affirmed the decision of the ALJ, this evidence is part of the record on review to this Court for determination of whether the ALJ's decision is supported by substantial evidence. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Review of Dr. Morris' treatment notes shows no objective finding that is significantly different from that of Dr. Knapp's: Dr. Morris checked boxes for "marked" depressed mood and social withdrawal; with respect to overall social factors, he checked "moderate" limitations for two of the categories, and marked limitations for the remaining three, and finding no "severe" limitations in any category. AR at 416. Accordingly, even considering Dr. Morris' opinion submitted after the ALJ's hearing, and in light of the allowance for work in a simple, repetitive, and unskilled environment with no general public contact, this Court finds the ALJ's RFC determination was based on substantial evidence in the record, and, as such, is not in error.

Plaintiff also contends the hypothetical question presented to the VE did not reflect the argued limitations in accepting input from others, including supervisors and coworkers. As discussed above, the ALJ agreed that plaintiff should have limited contact. The question presented to the VE reflected that

ORDER - 6

restriction, as the ALJ specified the limitation of "not dealing with the general public." AR at 447. Contrary to plaintiff's assertion, not one doctor opined plaintiff is unable to accept supervision or deal with coworkers. The ALJ sufficiently accounted for the input limitation by excluding work with the general public from the hypothetical; accordingly, the question to the VE was not in error.

Plaintiff next contends the ALJ erred by not accounting for the totality of Dr. Peterson's and Dr. Clifford's opinions in the RFC and for the VE's hypothetical question. Dkt. 16 at 9. Specifically, plaintiff asserts that the ALJ did not include all of the information from a Mental Residual Functional Capacity Assessment ("MRFC") form, which was completed by Dr. Peterson and reviewed by Dr. Clifford. AR 232-35. The MRFC form is a checkbox list of 20 categories of mental functioning for assessment as either not significant, moderate, or marked limitations; it also includes a narrative section for elaboration of the check-box conclusions. AR at 234. Plaintiff contends that the ALJ should have included the "moderate" assessments assigned to number 7, "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and number 11, "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR at 233. In response, defendant argues the ALJ correctly included the narrative section assessments, and that the narrative, rather than the check-boxes, are sufficiently descriptive of the limitations for inclusion in the RFC determination. Dkt. 17 at 6. Defendant does not address the VE hypothetical with respect to this issue.

Plaintiff cites *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995), in support of her argument. Dkt. 16 at 8-9. Plaintiff is correct that *Andrews* found the ALJ erred in not including all functional limitations found by the nonexamining medical expert, where the ALJ omitted certain moderate limitations in areas other than social limitations. *Andrews* 53 F.3d at 1044. Regardless, here, the ALJ did include the limitations set forth in MRFC form numbers 7 and 11 when presenting the hypothetical to the vocational expert:

> Now if the same hypothetical individual, although capable of performing at this level would occasionally have, for whatever reason, the inability to attend to [the] work site and be absent from work. What would be the tolerance of employers in these jobs for a

ORDER - 7

person to miss work on a monthly basis?

AR at 447.

In response, the vocational expert testified that the standard would be one day per month. *Id.* Thus, required by *Andrews*, the ALJ did consider and include the limitations opined by doctors Peterson and Clifford.

Plaintiff also points to the next question to the VE, by plaintiff's counsel:

> ...[A] moderate limitation in her ability to perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances. Additionally, she has the ability, a moderate limitations in her ability to complete a normal day and work week without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods.

AR at 448.

To the question, the VE responded that a person with the two described moderate limitations "would not function in a competitive work setting." *Id.* Plaintiff argues that the VE's answer shows that she would be unable to work. Dkt. 16 at 9; dkt. 18 at 2. This Court does not agree. Doctors Peterson and Clifford found plaintiff capable of work: the narrative section of their report found that she could "work with co-workers and accept direction from a supervisor, although depression and irritability affect interactions." AR at 234. Their report did not find a marked limitation in any category of functioning, and noted that she "can manage basic adaptive demands of the workplace but will benefit from assistance with irrevocable decisions." AR at 232-34. Thus, as supported by substantial evidence, the ALJ properly considered and conveyed the limitations in the report to the VE.

   *B.   The ALJ did not err in evaluating plaintiff's educational level.*

Lastly, plaintiff contends that, although she completed high school, the ALJ erred by finding plaintiff has a high school education because her actual educational attainment level is far lower than high school level. Dkt. 16 at 9-11; dkt. 18 at 3-5. Plaintiff points to 20 C.F.R. section 416.964(b) (2007) in support of her contention that the ALJ incorrectly evaluated her education level. Plaintiff is correct that factors other than grade level completion may be considered to adjust the actual educational abilities. Here, there is evidence in the record that plaintiff's education level is below high school standards. In 2002, Rodger Meinz, Ph.D., performed a psychological evaluation on referral from the Washington State

ORDER - 8

Division of Vocational Rehabilitation.  AR at 198-203.  Dr. Meinz noted that plaintiff reported she graduated valedictorian in 1989 from Seattle Indian Heritage high school (AR at 198); she has a history of drug and alcohol abuse (AR at 200, 202); she has a verbal IQ of 75, a performance IQ of 92, and a full scale IQ of 82 (AR at 200); a mathematics disorder--performing at fourth-grade level, a writing disorder--performing at fifth-grade level, and reading at seventh-grade level; she has a borderline verbal intellectual functioning and a Global Assessment Functioning score of 60 (AR at 201).  Concerning plaintiff's ability to work, Dr. Meinz noted:

> With regard to work issues, there are a number of recommendations issuing from the above testing results.  To begin with, Ms. Bear would probably best comprehend verbal instructions that were fairly straightforward and concrete.  She is capable of guiding her work from simple written instructions.  She would have difficulty writing anything other than very simple work notes, like simple telephone messages, and even then she would likely make a number of errors. ... In general, she is probably better suited for work that doesn't require her to write too much.
> ...
> The foregoing notwithstanding, Ms. Bear shows herself very capable of learning visual-spacial skills of an average level of complexity.  She displayed excellent sustained concentration and attention to the visual-spacial subtests and shows herself to have a very good eye for finished detail in her work.  She would probably best learn through an OJT [on the job training] format.
> ...
> Clearly, with a performance IQ of 92, Ms. Bear is eminently capable of learning to work at several jobs, and this despite her leaning problems with spelling and math.  She could, for example, work in a laundry department or as a prep cook or any other positions that do not require substantial verbal abilities while at the same time drawing on very intact visual-spacial abilities.

AR at 203.

Thus, although Dr. Meinz concluded plaintiff has lower than high school math, reading, and spelling skills, he concluded she is nonetheless mentally capable of learning job skills through on the job training, and found she is capable of performing jobs in which reading, math and writing are not integral. As such, Dr. Meinz's conclusions were not more restrictive than the other medical opinions analyzed in the ALJ's decision, thus, additional restrictions are not required by Mr. Meinz's findings.  Again, it is noteworthy that no examining or treating physician has opined that plaintiff is unable to work.  Early in the sequential evaluation process, the ALJ found that plaintiff had the mental impairment of "borderline intellectual functioning."  AR at 23, Finding 2.  The ALJ accounted for plaintiff's mental limitations by limiting her to work that has simple instructions and found she could make "simple work-related

ORDER - 9

decisions necessary to function in unskilled work." AR at 24, Finding 4. He found that "...her activities are consistent with a mental capacity for at least simple, routine, unskilled work not involving public interaction." AR at 24. Accordingly, because the Court finds that the ALJ's determination of plaintiff's RFC is supported by other substantial evidence in the record, despite the failure to address factors that may reduce plaintiff's effective education level, it is free of harmful legal error.

## VIII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is DISMISSED.

DATED this 12th day of March, 2008.

_____
Carolyn R. Dimmick
United States District Judge

ORDER - 10